UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


**FRANK LOFTUS,**

    **Plaintiff,**

                                        CASE NO. 08-13397
-vs-                                 HON. DENISE PAGE HOOD


**BLUE CROSS BLUE SHIELD OF**
**MICHIGAN and UAW LOCAL 2500,**

    **Defendants.**
_____/

## OPINION AND ORDER GRANTING DEFENDANT UAW LOCAL 2500'S MOTION FOR SUMMARY JUDGMENT AND GRANTING DEFENDANT BLUE CROSS BLUE SHIELD OF MICHIGAN'S MOTION FOR SUMMARY JUDGMENT AND DISMISSING ACTION

**I.    INTRODUCTION**

Before the Court is Defendant, UAW Local 2500's (Local 2500) Motion for Summary Judgment, filed on March 25, 2009. On April 30, 2009, Plaintiff, Frank Loftus, filed an Answer to Local 2500's Motion for Summary Judgment. On May 6, 2009, Local 2500 filed a Reply Brief in Support of its Motion for Summary Judgment.

Also before the Court is Defendant, Blue Cross Blue Shield of Michigan's (BCBSM) Motion for Summary Judgment, filed on April 13, 2009. On May 9, 2009, Plaintiff filed an Answer to BCBSM's Motion for Summary Judgment. On May 6, 2009, BCBSM filed a Reply Brief in Support of its Motion for Summary Judgment. A hearing on these matters was held on May 13, 2009.

**II.    STATEMENT OF FACTS**

Plaintiff was employed by BCBSM from April 30, 1984 through February 19, 2007, when

BCBSM terminated his employment. At the time of his termination, Plaintiff's job title was Senior Audio-Visual Specialist. During his employment at BCBSM, Plaintiff was a member of Local 2500, the collective bargaining representative for BCBSM employees stationed in downtown Detroit. Local 2500 and BCBSM were parties to a collective bargaining agreement (CBA) in effect from September 1, 2005 through August 31, 2008.

On January 5, 2007, Plaintiff requested a six-month leave of absence from work for a "Personal Pilgrimage to the Holy Land." *See* Local 2500's Mot. Summ. J., Ex. J. Article 18.9.1 of the CBA provides that "[e]mployees with one (1) or more years of seniority may request an unpaid personal leave of absence for periods not less than thirty (30) days nor more than twelve (12) months." *Id*., Ex. G. Article 18.9.1 further provides that BCBSM "will not arbitrarily deny eligible employees such leaves," and in considering personal leave requests, will weigh five factors: (a) the ability of the department to reinstate the employee upon his return to work; (b) the reasonableness of the leave request; (c) whether the employee has vacation time that can be used, "in which case the same shall be used before starting leave;" (d) the effect of the employee's absence on the department's operations; and (e) "the employees length of service and work record." *Id.*

Initially, Plaintiff's immediate supervisor, Dennis Wickline, approved the six-month leave request. According to Plaintiff, Mr. Wickline indicated that his approval was contingent upon Plaintiff being available for the annual corporate board meeting, so Plaintiff reduced his request to five and a half (5 ½) months. Compl. at ¶ 16. The request then went to Mr. Wickline's supervisor, Director William Elwell, for his approval. After considering the request, Elwell concluded that the Audio Visual Department, which including Mr. Wickline and Plaintiff, had only three employees stationed in Detroit, could not function for six months without Plaintiff. In order to accommodate

Plaintiff's leave request and still keep the department functioning, BCBSM would need to hire outside contractors and pay its employees overtime to cover Plaintiff's duties during his absence. The cost of covering for Plaintiff would have cost BCBSM approximately $36,000.00, well beyond the department's $18,000.00 yearly budget for hiring temporary contractor services. *See* BCBSM's Mot. Summ. J., Ex. 3, ¶¶ 5-6.

On January 11, 2007, Mr. Elwell and Mr. Wickline met with Plaintiff and informed him that his request for a six-month leave of absence was denied, but instead he would be approved for a thirty day leave of absence. Under Article 18.9.1(c) of the CBA, Plaintiff could combine his annual vacation allowance of four weeks, with the thirty days of unpaid leave, for a total of two months of leave.

After praying and thinking about his leave request, Plaintiff came to two conclusions. He concluded that Andy Hetzel, BCBSM's Vice-President of Corporate Communications, was responsible for denying his six-month leave request. He also concluded that the denial of his request was religious discrimination. On January 17, 2007, Plaintiff sent an email to Mr. Hetzel. This email stated in pertinent part:

> I REALLY CAN'T BELIEVE I'M FORCED, BY YOUR CONDUCT, TO DO WHAT I'M ABOUT TO DO!
> \*          \*          \*
> Then, I realized you were sending a very clear signal of Religious Discrimination! So, here is what I'm wondering about? I know I have a case!
> My problem is: "What would be the best forum, to get you to wake up to the fact that Religious Discrimination is a 'Bad Thingy!'"
> \*          \*          \*
> I'm wondering where you two go to Church, or Synagogue, or congregation of like minded creeps who just freely think that religious people are canon fodder?
> \*          \*          \*
> I look forward to better communications with you in the future. NEVER COME BETWEEN A PERSON AND GOD !!!!!!! Its not religious discrimination, it stirs the Spiritual power of God's presence to come back at you!

>  \*          \*          \*
> 
> I wish you no ill, but don't toy with me!

*See* BCBSM's Mot. Summ. J., Ex. 4. Mr. Hetzel was very concerned after receiving this email, as he had nothing to do with the decision to deny Plaintiff's leave request. Mr. Hetzel was also concerned about what he believed was an implication in the email that Plaintiff might do something harmful to him. Mr. Hetzel immediately forward the email to Kathy Elston, Vice-President of Employee Relations, and Senior Vice-President of Legal, Lisa DeMoss.

Shari Barrick, BCBSM's Manager of Employee Relations, was assigned to investigate Plaintiff's email. Several hours after Plaintiff sent the email, Ms. Barrick called him to discuss it. Mr. Wickline and Local 2500 Zone Representative Airlette Green also participated in this conversation. Ms. Barrick informed Plaintiff that BCBSM viewed the email as threatening, and that as a result, she was placing him on a paid suspension while she investigated the matter. Later that same day, Ms. Green field a grievance protesting Plaintiff's suspension, requesting that "[d]iscipline [be] removed and employee made whole for all losses, inclusive of overtime pay if applicable." *See* Local 2500's Mot. Summ. J., Ex. O. On February 19, 2007, BCBSM denied the grievance, stating that suspension was "entirely appropriate" because Plaintiff "made inappropriate use of the corporate email system and sent a threatening email in direct violation of corporate policy regarding 'violence in the workplace' which directly references threats." *Id.*

On February 19, 2007, Plaintiff, Ms. Barrick, Mr. Wickline and Ms. Green participated in another meeting. Ms. Barrick terminated Plaintiff's employment, on the basis that the email was threatening and in violation of BCBSM's policies barring misconduct and violence in the workplace. Immediately after this meeting, Ms. Green filed a second grievance alleging that Plaintiff was unjustly terminated in violation of Articles 2, 4 and 9 of the CBA– the Purpose and Intent, Fair

Employment Practices, and Discipline and Discharge sections of the contract– and demanding that he be "reinstated inclusive [of] retro[active] pay and made whole for all losses inclusive of overtime pay if applicable." *Id.*, Ex. S. BCBSM denied the grievance on February 26, 2007.

Local 2500 President Sally Bier took over processing Plaintiff's grievances at the third step of the grievance procedure. After investigating the matter and speaking with Plaintiff, Ms. Bier considered the email to Mr. Hetzel to be bizarre, and possibly misconduct under applicable work rules, but she thought that termination was too harsh given Plaintiff's lengthy employment and good work record prior to sending the email. *Id.*, Ex. A at ¶ 5. Plaintiff insisted that BCBSM's actions constituted religious discrimination, however Ms. Bier could find nothing to suggest that BCBSM's actions were motivated by animus toward Plaintiff's religion. *Id.* Ms. Bier later concluded that BCBSM had not discriminated against Plaintiff, a conclusion also reached by UAW International Representative, Tony Freyers. *Id.*, Ex. B at ¶ 6.

Despite her finding that religious discrimination was not behind BCBSM's actions, Ms. Bier still believed that Plaintiff's termination was disproportionate punishment based on his lengthy employment and good work record. *Id.*, Ex. A at ¶ 5. She attempted to negotiate his reinstatement, however BCBSM was firm in its refusal to return Plaintiff to work because it continued to view his actions as gross misconduct and a threat to safety in the workplace. *Id.* On October 11, 2007, BCBSM denied both grievances at the third step previously filed by Ms. Green. BCBSM denied these grievances at the third step because "[t]he email sent by [Plaintiff] contained inappropriate, threatening and intimidating language," and that his comments violated the BCBSM Workplace Expectations/Work rules and the Company's Termination, Violence in the Workplace, and Anti-Harassment/Discrimination polices. *Id.*, Ex. U.

On January 9, 2008, Ms. Bier appealed Plaintiff's grievances to arbitration, the fourth and final step of the grievance procedure. She contacted Mr. Feyers for assistance with arbitration. Mr. Feyers prepared for arbitration by meeting with Plaintiff, discussing the case with Ms. Green and Ms. Bier, and interviewing Plaintiff's former BCBSM co-worker, Steve Linne. *Id*., Ex. B at ¶ 6. Although Mr. Feyers thought there was a chance for success at arbitration, he also had some concerns about the strength of the case because he believed that an arbitrator could reasonably decide that sending the email to Mr. Hetzel constituted misconduct, as well as his belief that Plaintiff would not be a strong witness. *Id.* Due to these concerns, Mr. Feyers also attempted to negotiate a settlement with BCBSM while still preparing for arbitration. *Id*. at ¶ 8.

In early August of 2008, BCBSM offered to settle the grievances by paying Plaintiff one year's salary in a lump-sum payment, converting his termination to a voluntary resignation, which would restore all of his retirement benefits, and, on request, provide him with a neutral reference letter. *Id.* In exchange, Local 2500 would withdraw its grievances, and Plaintiff would release BCBSM from all claims. *Id.* Mr. Feyers met with Plaintiff for several hours on August 11, 2008 and presented the settlement offer to him. *Id*. at ¶ 9. Mr. Feyers told Plaintiff that he believed the settlement was reasonable and therefore would accept it on behalf of the Union and withdraw the grievances. *Id.* Mr. Feyers also told Plaintiff that if Plaintiff disagreed with this decision, that Plaintiff could appeal the decision under Article 33 of the UAW Constitution. *Id.* Plaintiff declined the settlement offer.

On September 4, 2008, Mr. Feyers mailed a copy of the final settlement offer to Plaintiff and in an attached letter reiterated that the Union had accepted the settlement and now considered the case closed. Id., Ex. AA. Mr. Feyers' letter also reminded Plaintiff that he could appeal the Union's

decision under Article 33. *Id.* Plaintiff failed to respond to Mr. Feyers' letter or to appeal the actions undertaken by Local 2500.

On August 5, 2008, Plaintiff filed the instant action alleging that BCBSM had discriminated against him on the basis of religion, in both its handling of the leave of absence request and the termination of his employment. Compl. at ¶, 40. Plaintiff also alleged that BCBSM breached the CBA and that Local 2500 failed to represent him fairly and promptly. *Id.* at ¶¶ 40-41.

### III. APPLICABLE LAW & ANALYSIS

#### A. Standard of Review

Pursuant to Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment may only be granted in cases where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party bears the burden of showing no dispute as to any material issue. *Equal Employment Opportunity Comm'n v. MacMillan Bloedel Containers, Inc.*, 503 F.2d 1086, 1093 (6th Cir. 1974). A dispute must be evident from the evidence in order to deny such a motion. Such a dispute must not merely rest upon the allegations or denials in the pleadings, but instead must be established by affidavits or other documentary evidence. Fed.R.Civ.P. 56(e). When ruling, the Court must consider the admissible evidence in the light most favorable to the non-moving party. *Sagan v. United States of Am.*, 342 F.3d 493, 497 (6th Cir. 2003).

#### B. BCBSM's Motion for Summary Judgment

BCBSM argues that it is entitled to judgment in its favor because Plaintiff cannot establish

a prima facie case on his religious accommodation claim under Title VII.[1] Specifically, BCBSM alleges that Plaintiff has failed to come forward with any evidence in support of the first and third elements of a religious accommodation claim. The Sixth Circuit applies a two-part framework to analyze religious discrimination claims under Title VII. First, the employee must establish a prima facie case by demonstrating that: (1) he holds a sincere religious belief that conflicts with an employment requirement; (2) he has informed his employer of the conflict; and (3) he was discharged or disciplined for failing to comply with the conflicting requirement. *See Tepper v. Potter*, 505 F. 3d 508, 514 (6th Cir. 2007) (citations omitted). Second, if the employee establishes a prima facie case, the burden shifts to the employer to prove that it offered a reasonable accommodation to the employee's request, or that it could not reasonably accommodate the employee without undue hardship in the conduct of its business. *See Ansonia Bd. of Educ. v. Philbrook*, 479 U.S. 60, 68 (1986); *Virts v. Consol. Freightways Corp.*, 285 F. 3d 508, 516 (6th Cir. 2002) (internal citations omitted).

The Court finds that Plaintiff has not presented sufficient evidence to establish a prima facie case of religious discrimination for failure to accommodate under Title VII. First, Plaintiff cannot demonstrate that the *length* of the leave requested was grounded in a sincerely held religious belief that conflicted with an employment requirement. Plaintiff has admitted that his pilgrimage was voluntary and his personal choice. *See* BCBSM's Mot. for Summ. J., Ex. 2 at 29, 31-33, and 36. An employer has a duty to reasonably accommodate an employee's religious beliefs, an employer

---

[1] Defendant also argued that Plaintiff's § 1983 claims should be dismissed because BCBSM is a private employer and has not acted under color of state law. *See Gottfried v. Med. Planning Servs., Inc.*, 280 F. 3d 684, 691-92 (6th Cir. 2002). Plaintiff indicates in his Answer that he will stipulate to the dismissal of this claim. Accordingly, Plaintiff's civil rights claim brought pursuant to 42 U.S.C. § 1983 is dismissed.

does not have a duty to accommodate an employee's personal preferences. *Dachman v. Shalala*, 9 Fed. Appx. 186, 192 (4th Cir. 2001); *Wessling v. Kroger Co.*, 554 F. Supp. 548 (E.D. Mich. 1982) (employee's voluntary participation in religious function was not a religious obligation sufficient to invoke Title VII).

In *Tiano v. Dilliard Dep't Stores, Inc.*, 139 F. 3d 679 (9th Cir. 1998), the plaintiff claimed she had a calling from God to travel to Yugoslavia and visit where others claimed to have seen visions of the Virgin Mary. *Id.* at 680. Because the plaintiff's requested leave of absence was during the holiday season, the defendant denied her request as prohibited by company policy. *Id.* at 680-81. Despite the defendant's denial, the plaintiff went on the pilgrimage, and was considered to have voluntarily resigned her position. *Id.* at 681. The Ninth Circuit dismissed the plaintiff's claim under Title VII, finding that she could not establish a prima facie case as the timing of the plaintiff's pilgrimage was not based on a religious belief but rather her personal preference rather than a religious calling. *Id.* at 682-83. This is similar to Plaintiff's situation. Plaintiff's desire to travel to the Holy Land for six months was based on his personal preference rather than a religious obligation. Therefore, Plaintiff cannot establish a prima facie case of religious discrimination under Title VII.

Plaintiff also fails to establish a prima facie case because he cannot demonstrate that he was discharged for failing to comply with an employment requirement that conflicted with his religion as required by the third element of a prima facie case. Plaintiff was discharged because of the email he sent to Mr. Hetzel, which BCBSM considered to be misconduct and a violation of several policies. Nothing in the record supports the termination was based on Plaintiff's request to go on a pilgrimage.

In response to BCBSM's Motion for Summary Judgment, Plaintiff provides the Court with two affidavits from fellow Christian Scientists, as well as a description of his devotion to his religion. Nothing contained within these affidavits demonstrates that a six-month pilgramage to the Holy Land is a tenant of Christian Science. At most, one affiant states that he, "know[s] of other Christian Scientists in the Detroit area who visited the Holy Land as part of their religious observance." *See* Plf.'s Resp., Ex. B at ¶ 15

Even assuming that Plaintiff could establish a prima facie case on his religious discrimination, failure to accommodate claim, Plaintiff's claim would still fail because his six-month leave request would have imposed an undue burden on BCBSM. An employer is liable under Title VII only if the accommodation of the employee's beliefs would not present an undue hardship. *See Trans World Airlines, Inc. v. Hardison*, 432 U.S. 63, 84 (1977). "Title VII does not require an employer to bear more than a de minimus cost in accommodating an employee's religious beliefs." *Cooper v. Oak Rubber Co.*, 15 F. 3d 1375, 1380 (6th Cir. 1994) (hiring an additional worker or risking production loss to accommodate religious belief resulted in more than *de minimus* cost). BCBSM would have incurred more than a *de minimus* cost had Plaintiff been granted a six-month leave of absence. Plaintiff was one of three employees in his department. In order to accommodate Plaintiff's request and still keep the department functioning, BCBSM would have had to hire outside contractors and pay overtime to Plaintiff's counterparts, which would have cost BCBSM $36,000.00, costing BCBSM double its yearly budget for hiring outside contractors. Plaintiff fails to present any evidence to counter BCBSM's cost considerations.

To the extent that Plaintiff claims that he was discharged based on religious discrimination, such a claim has no merit. Because Plaintiff has failed to come forward with direct evidence of

discrimination, the *McDonnell Douglas* burden shifting paradigm must be used to determine whether Plaintiff has set forth a prima facie case of religious discrimination. *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973); *see also, Jacklyn v. Schering-Plough Healthcare Prod. Sales Corp.*, 176 F. 3d 921, 926 (6th Cir. 1999). Once Plaintiff has established a prima facie case, the burden of proof then shifts to Defendant to articulate a legitimate, nondiscriminatory reason for the employment action. *See McDonnell Douglas*, 411 U.S. at 802; *McDonald v. Union Camp Corporation*, 898 F. 2d 1155, 1160 (6th Cir. 1990). If Defendant articulates such a reason, the burden then shifts back to Plaintiff to prove that the reason given is pretext for discrimination. *Id.*

Here, Plaintiff cannot establish that the reason for his discharge, the email sent to Mr. Hetzel, was pretext for discrimination. In fact, Plaintiff does not attribute any discriminatory animus or motive to Ms. Barrick, the decision-maker over his discharge. *See* BCBSM's Mot. for Summ. J., Ex. 2 at 148. Further, the individual responsible for reducing his leave request from six months to two months, Mr. Elwell, neither said nor did anything to suggest he had an issue with Plaintiff's faith. *Id.* at 70, 148. Plaintiff testified that he did not believe Mr. Elwell would have discriminated against him. *Id.* at 84-85.

Instead, Plaintiff blames the alleged religious discrimination entirely upon Mr. Hetzel. *Id.* at 148. However, Mr. Hetzel was not involved in the decision to approve or deny Plaintiff's leave of absence request. Plaintiff testified that he did not know if Mr. Elwell spoke with Mr. Hetzel prior to denying Plaintiff's six-month leave request. Most importantly, Plaintiff does not know if Mr. Hetzel had any animus toward Plaintiff's religious beliefs. *Id.* at 69. Plaintiff cannot establish that his discharge was impermissibly based on his religion. A plaintiff must prove that "discrimination was a determining factor in the employer's decision." *Millner v. DTE Energy Co.*, 285 F. Supp. 2d

950, 966 (E.D. Mich. 2003) (internal citations omitted). Because Plaintiff cannot establish that his termination was for a reason separate and apart from the email directed at Mr. Hetzel, he has no claim under Title VII for religious discrimination.

Plaintiff has also asserted a claim against BCBSM for its alleged breach of the CBA. An individual employee may bring suit against an employer for its breach of a collective bargaining agreement. *See DelCostello v. Int'l Broth. of Teamsters*, 462 U.S. 151, 164 (1983) (internal citations omitted). If a union breaches its duty of fair representation, an employee may bring suit against the employer under § 301 of the Labor Management Relations Act, 29 U.S.C. § 185. Such a suit also involves a claim against the Union for breach of duty of fair representation. *Id*. at 164-65. The two claims are inextricably interdependent. *Id.* No liability attaches unless both prongs of the claim are established. *Roeder v. Am. Postal Workers Union, AFL-CIO*, 180 F. 3d 733, 737 (6th Cir. 1999) (internal citations omitted).

BCBSM's denial of Plaintiff's six-month leave request did not violate the CBA. The CBA does not grant employees an absolute right to a personal leave of absence. See BCBSM's Mot. for Summ. J., Ex. 8, Art. 18.9.1. The CBA requires that several factors be considered when evaluating an employee's leave of absence request. Plaintiff has failed to establish that BCBSM did not evaluate each factor when concluding that denial of Plaintiff's leave request was appropriate. Further, BCBSM's termination of Plaintiff's employment due to the email he sent to Hetzel did not violate the CBA. *Id*., Arts. 9.2.1 and 9.2.2. Plaintiff has failed to establish that BCBSM breached the CBA. Therefore, BCBSM's Motion for Summary Judgment is granted.

### C. Local 2500's Motion for Summary Judgment

Local 2500 argues that Plaintiff's claims are subject to dismissal because Plaintiff failed to

exhaust mandatory internal union remedies. Plaintiff counters that exhaustion would have been futile, so this Court should waive the exhaustion requirement and review Plaintiff's claim against Local 2500. The Court agrees with Defendant that Plaintiff failed to exhaust his internal union remedies.

"It is well established that union members, particularly U.A.W. members, must exhaust the internal remedies provided in their constitution before resorting to the courts." *Reinhardt v. International Union, United Automobile, Aerospace and Agricultural Implement Workers of Am.*, 636 F. Supp. 864, 867 (E.D. Mich. 1986) (citing *Clayton v. International Union, U.A.W.*, 451 U.S. 679 (1981)). Article 33, § 1 of the UAW Constitution allows members to challenge any "action, decision, or penalty" undertaken by the International Union or "any of its Officers, Regional Directors or International Representatives," as well as any Local Union "or any of its units, committees, officers, committee persons or stewards." *See* Local 2500's Mot. for Summ. J., Ex. I. A challenge to a Local Union's handling or disposition of a grievance is first brought to the Local membership, and then may be appealed to the International Executive Board (IEB), while a challenge to an International Representative's actions is brought directly to the IEB. *Id.* The IEB is empowered to hold hearings, at which appellants may present evidence, call witnesses, and be represented by counsel. *Id.* Adverse IEB decisions may be appealed to the Convention Appeals Committee (CAC), a body consisting of representatives from each of the International Union's eleven regions, or the Public Review Board (PRB), an independent panel composed of distinguished law professors. *Id.* Article 33, § 5 mandates that an aggrieved member fully exhaust internal appeals prior to bringing an action in court. *Id.* Additionally, the CBA requires "[e]mployees covered by the Labor Agreement between the Company and the Union shall as a preceding condition

to maintaining any court or administrative agency charge, suit or action against either the Company or the Union involving the application or interpretation of the Labor Agreement . . . fully and in a timely fashion exhaust their available internal union appeals procedure under the Constitution of the International Union, U.A.W." *Id.*, Ex. G. Here, Plaintiff concedes that he failed to exhaust his internal union appeals.

There are situations where a district court may waive the exhaustion requirement. *See Clayton*, 451 U.S. at 689. This Court may excuse Plaintiff's failure to exhaust internal union appeals if he can establish that exhaustion would have been futile, or that "(1) hostility on the part of union officials at every level of the appeal process precludes a fair hearing of [his] claim; (2) the internal appeals process is inadequate to provide complete relief or reinstatement of a grievance; or (3) exhaustion would unreasonably delay [his] ability to seek a judicial hearing on the merits of his . . . claim." *DeMott v. UAW*, No. 07-12648, 2007 WL 4303222, at *3 (E.D. Mich. Dec. 6, 2007) (citing *Wagner v. General Dynamics*, 905 F. 2d 126, 128 (6th Cir. 1990). Plaintiff has failed to establish that exhaustion would have been futile. He has not shown, or even argued that hostility exists at every level of the appeals process. He cannot show that the internal appeals process would be inadequate because Article 7.9.2 of the CBA provides that if the internal appeals process results in a finding that the Union breached the duty of fair representation, BCBSM "agrees that it will reopen and further process any such complaint or grievance in accordance with the grievance-arbitration procedure." *See* Def. UAW's Mot. for Summ. J., Ex. G. Lastly, Plaintiff has not demonstrated that exhaustion would have unreasonably delayed his ability to seek judicial redress.

Plaintiff's argument that Local 2500 failed to file a grievance based on religious discrimination does not excuse his failure to exhaust his internal union appeals, nor render

exhaustion futile. Plaintiff is required "to come forward with specific facts showing that there was an issue concerning the futility of the intra-union remedies once [Defendant] presented the necessary documentary evidence that an employee in [Plaintiff's] position had intra-union remedies." *Willetts v. Ford Motor Co.*, 583 F. 2d 852, 856 (6th Cir. 1978). Instead, Plaintiff "presents no facts, only conclusory allegations, that he could not obtain relief by utilizing internal union appeal procedures. Such argument is insufficient to prevent the grant of summary judgment." *Id.*

Even if Plaintiff had exhausted his internal union appeals, his claim would still fail. The Supreme Court and the Sixth Circuit have repeatedly found that if a plaintiff is to succeed on a hybrid breach of contract claim, the plaintiff must establish both that the union breached its duty of fair representation and that the employer breached the collective bargaining agreement. *See Jones v. United States Postal Serv.*, 462 F. Supp. 2d 800, 808 (E.D. Mich. 2006). Because this Court finds that Defendant BCBSM did not breach the CBA, Plaintiff's claim against Local 2500 must necessarily fail. "[W]ithout a valid claim against the employer, the union could not be challenged because no duty to the employee would have been triggered." *Id.* (citing *White v. Anchor Motor Freight*, 899 F. 2d 555, 559 (6th Cir. 1990); *Roeder*, 180 F. 3d at 737. Therefore, Local 2500's Motion for Summary Judgment is granted.

## IV.   CONCLUSION

Accordingly,

IT IS ORDERED that Local 2500's Motion for Summary Judgment [**Docket No. 24, filed on March 25, 2009**] is GRANTED.

IT IS FURTHER ORDERED that BCBSM's Motion for Summary Judgment [**Docket No. 26, filed on April 13, 2009**] is GRANTED.

IT IS FURTHER ORDERED that this cause of action is dismissed with prejudice.

S/Denise Page Hood
Denise Page Hood
United States District Judge

Dated: March 24, 2010

I hereby certify that a copy of the foregoing document was served upon counsel of record on March 24, 2010, by electronic and/or ordinary mail.

S/William F. Lewis
Case Manager